1

2

3

4

5

6

7

8         UNITED STATES DISTRICT COURT
         WESTERN DISTRICT OF WASHINGTON
9                  AT TACOMA

10   LOUIS JAMES THIBODEAUX,

11                  Plaintiff,          CASE NO. 3:20-cv-05110-BHS-JRC

                                        REPORT AND RECOMMENDATION
12            v.
                                        NOTED FOR: February 19, 2021
13   DANIEL WHITE, *et al.*,

14                  Defendants.

15

16        The District Court has referred this 42 U.S.C. § 1983 civil rights action to United States

17   Magistrate Judge J. Richard Creatura pursuant to 28 U.S.C. § 636(b)(1) and MJR1, MJR3, and

18   MJR4.  The matter is before the Court on the parties' cross motions for summary judgment.  *See*

19   Dkts. 66, 67.

20        Plaintiff, a prisoner proceeding *pro se* and *in forma pauperis*, brings claims under 42

21   U.S.C. § 1983 against Washington Corrections Center superintendent Daniel White, corrections

22   officer Russel Harold, and nurse Junny Shun, related to their alleged failure to treat an

23   exacerbation of his chronic heart condition.   In response to defendants' summary judgment

24

REPORT AND RECOMMENDATION - 1

motion and in support of his own summary judgment motion, plaintiff has come forward with evidence that defendant Shon ignored plaintiff's complaints on December 26, 2018, that he was suffering from shortness of breath and chest pain, causing plaintiff to suffer pain for another two days before he was treated. And plaintiff has come forward with evidence that defendant Harold purposely forced plaintiff to exert himself on December 28, 2018, despite plaintiff's protests that this would cause him to suffer a medical emergency. Additionally, plaintiff has raised genuine issues of fact regarding whether he exhausted his claims. Based on these factual issues, the summary judgment motions should be denied related to claims against defendants Harold and Shon for violation of § 1983 for acting or failing to act with deliberate indifference.

However, plaintiff has failed to show that defendant White was involved in any of these matters and instead essentially relies upon defendant White's role as superintendent to hold White liable. Claims against defendant White—as well as claims for violation of state law, for declaratory and injunctive relief, and for violations of the Americans with Disabilities Act and Rehabilitation Act—should be dismissed with prejudice. Plaintiff's summary judgment motion should be denied, and defendants' summary judgment motion should be granted—except as related to the claims against defendants Harold and Shon under § 1983. All claims other than plaintiff's claims against defendants Shon and Harold under § 1983 should be dismissed with prejudice.

## BACKGROUND

### I. Allegations of the Amended Complaint

Plaintiff initiated this matter in February 2020. Dkt. 1. In the operative complaint (Dkt. 58), plaintiff alleges that he suffers from heart disease and diabetes, requiring the use of a wheelchair. *See* Dkt. 58, at 3. Plaintiff alleges that since November 28, 2018, he has been

diagnosed with severe cardiomyopathy and chronic systolic and diastolic heart failure, requiring repeated follow-ups with his cardiologist, prescribed medication, and EKG testing.  Dkt. 58, at 3–4.  Plaintiff claims that after being taken into Department of Corrections ("DOC") custody in December 2018, he went 23 months without seeing a cardiologist for his required follow-up care. Dkt. 58, at 7–8.  Plaintiff alleges that defendants "maintained a policy and practice of denying combination treatment and medications unless plaintiff's heart disease[] advances beyond the heart failure stage."  Dkt. 58, at 11.

As relevant to his claims in this lawsuit, plaintiff alleges that from December 21 to 28, 2018, while plaintiff was in WCC custody, he was not receiving his heart medication.  Dkt. 58, at 7–8.  Plaintiff asserts that on December 26, 2018, he called a medical emergency because he was suffering from severe chest pain and shortness of breath and was seen by defendant Shon, a nurse.  Dkt. 58, at 15–16, 20.  Plaintiff alleges that defendant Shon refused to provide plaintiff with medication and treat his chest pain, refused to call a provider or administer an EKG, and "simply ignored" the severe chest pains.  Dkt. 58, at 15–16, 22, 24.

Plaintiff further alleges that during the period from December 21 to 28, 2018, defendant Harold, a corrections officer, repeatedly verbally harassed plaintiff and failed to provide access to medical care when plaintiff was suffering severe chest pains.  *See* Dkt. 58, at 14, 17–18. According to plaintiff, this culminated in an incident on December 28, 2018, when defendant Harold refused to allow plaintiff to have a wheelchair pusher or assist plaintiff with wheeling his wheelchair, even though plaintiff had told defendant Harold that exerting himself would exacerbate plaintiff's health issues.  Dkt. 58, at 30.  Plaintiff alleges that he had to wheel himself to the prison infirmary, where he then declared a medical emergency and was taken to an emergency room, suffering from an acute heart failure.  Dkt. 58, at 18.

1    Plaintiff alleges that defendant White, the WCC superintendent, failed to train defendants

2   Harold and Shon, causing the alleged constitutional deprivations, and also that defendant White

3   knew of the alleged events and failed to intervene.  *See* Dkt. 58, at 4, 15, 27.  According to

4   plaintiff, defendants' actions constituted cruel and unusual punishment and defendant Harold's

5   actions violated the Americans with Disabilities and Rehabilitation Acts.  *See* Dkt. 58, at 5.

6    Because plaintiff is *pro se*, the allegations in his amended complaint made on personal

7   knowledge and under penalty of perjury (*see* Dkt. 58, at 35) and setting forth facts that would be

8   admissible in evidence are taken as true for purposes of deciding the summary judgment

9   motions.  *See Jones v. Blanas*, 393 F.3d 918, 923 (9th Cir. 2004).

10   **II.  Procedural History in this Court**

11    The Court has previously dismissed plaintiff's claims against defendant Shon and White

12   with leave to amend.  *See* Dkt. 40 (report and recommendation); Dkt. 50 (order on report and

13   recommendation granting leave to amend claims against Shon and White).   Plaintiff

14   subsequently filed the second amended complaint, which is the operative complaint in this

15   matter.  *See* Dkt. 58.

16    In November 2020, plaintiff filed a motion for partial summary judgment.  Dkt. 66, at 1.

17   Defendants filed a cross-motion for summary judgment in response, including a notice of

18   dispositive motion.  Dkts. 67, 68.  Plaintiff has filed a response to the cross-motion for summary

19   judgment (Dkt. 74), including evidence in support of his claims (Dkts. 75, 76), and defendants

20   have filed a reply in support of their motion, including a motion to strike certain of plaintiff's

21   statements.  Dkt. 77, at 2.  Plaintiff has filed a sur-reply (Dkt. 84), and the matter is ripe for

22   decision.  The discussion below references the parties' evidence as relevant to their respective

23   arguments for summary judgment.

24

**DISCUSSION**

**I. Legal Standard on Summary Judgment**

Summary judgment is appropriate if a moving party shows that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The materiality of a given fact is determined by the required elements of the substantive law under which the claims are brought. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Factual disputes that do not affect the outcome of the suit under the governing law will not be considered. *Id.*

Where there is a complete failure of proof concerning an essential element of the non-moving party's case on which the nonmoving party has the burden of proof, all other facts are rendered immaterial, and the moving party is entitled to judgment as a matter of law. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); *Anderson*, 477 U.S. at 254 ("the judge must view the evidence presented through the prism of the substantive evidentiary burden"). However, when presented with a motion for summary judgment, the court shall review the pleadings and evidence in the light most favorable to the nonmoving party, *Anderson*, 477 U.S. at 255 (citation omitted), and "a pro se complaint will be liberally construed. . . ." *Pena v. Gardner*, 976 F.2d 469, 471 (9th Cir. 1992) (citing *Estelle v. Gamble*, 429 U.S. 97, 106 (1976)) (other citation omitted).

Once the moving party has carried its burden under Fed. R. Civ. P. 56, the party opposing the motion must do more than simply show that there is some metaphysical doubt as to the material facts. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 586 (1986). The opposing party cannot rest solely on his pleadings but must produce significant, probative evidence in the form of affidavits, and/or admissible discovery material that would allow a

1   reasonable jury to find in his favor. *Id.* at n.11; *Anderson*, 477 U.S. at 249–50. However,

2   weighing of evidence and drawing legitimate inferences from facts are jury functions, and not

3   the function of the court. *See United Steel Workers of Am. v. Phelps Dodge Corps.*, 865 F.2d

4   1539, 1542 (9th Cir. 1989).

5      **II. Motion to Strike**

6      As a preliminary matter, the Court addresses defendants' motion to strike a number of

7   plaintiff's allegations and statements. *See* Dkt. 77.

8      First, defendants ask that the Court strike plaintiff's statements that are legal conclusions.

9   The Court notes that much of plaintiff's submissions are legal conclusions or legal argument—

10   not evidence entitled to be taken as true in response to a summary judgment motion. The Court

11   declines to strike these statements, but instead will not take them as true when considering the

12   summary judgment motions. For instance, the Court will not take as true plaintiff's statements

13   that defendant Harold violated DOC policy because plaintiff has failed to explain the evidentiary

14   basis for such claims. And the Court will not take as true conclusory statements that defendant

15   White refused to help plaintiff and failed to adequately train staff because plaintiff has failed to

16   provide competent evidence supporting that defendant White was actually aware of the events at

17   issue during the relevant time.

18      Second, defendants ask that the Court strike plaintiff's claims that his heart condition is a

19   disability under the ADA or RA. The Court declines to rule on this request since whether or not

20   plaintiff suffers from a qualifying disability, his ADA and RA claims should be dismissed with

21   prejudice for other reasons set forth below.

22      Third, defendants request that the Court strike plaintiff's statements about defendant

23   Harold knowing of plaintiff's medical conditions or history (Dkt. 75, at 2, 7; Dkt. 76, at 4) and

24

1    disregarding a known risk to plaintiff's safety.  Dkt. 75, at 5.  The Court declines to do so.

2    Plaintiff specifically states that he had told defendant Harold that plaintiff was suffering from

3    severe chest pains and would have to declare a medical emergency if he had to wheel himself to

4    the infirmary.  Dkt. 58, at 30; Dkt. 76, at 4.  The Court agrees with defendants that plaintiff's

5    reliance on his cardiologist's letter (*see* Dkt. 75, at 8) is inadequate to show that defendant

6    Harold was aware of plaintiff's conditions.  However, it is a reasonable inference from plaintiff's

7    description of events that plaintiff information defendant Harold of his pre-existing conditions, in

8    addition to his symptoms.  *See also* Dkt. 30, at 19 (plaintiff's grievance stating that he told

9    Harold about his conditions).  Moreover, even if defendant Harold did not know about plaintiff's

10   heart condition, as discussed in greater detail below, a finder of fact could reasonably find

11   defendant Harold deliberately indifferent on the basis that plaintiff told Harold he was suffering

12   the symptoms of a heart attack.

13         Fourth, defendants request that the Court strike plaintiff's assertion that he had a health

14   status report before December 29, 2018, authorizing plaintiff to have a wheelchair pusher.  Dkt.

15   77, at 3.  The Court declines to strike plaintiff's assertion.  Whether or not plaintiff had a health

16   status report authorizing a wheelchair pusher does not change the outcome of this Report and

17   Recommendation.  Even if plaintiff did not have an authorization for a wheelchair pusher,

18   plaintiff has come forward with evidence to support that defendant Harold was deliberately

19   indifferent to plaintiff's request for assistance on December 28, 2018, as discussed in greater

20   detail below.

21         Fifth, defendants request that the Court strike allegations that defendants forced plaintiff

22   to forego insulin line.  Dkt. 77, at 3.  Again, the Court declines to strike these statements, but will

23

24

not take conclusory legal allegations as true when issuing this report and recommendation. Plaintiff has failed to provide more than conclusory allegations on this point.

Sixth, the Court declines to strike plaintiff's claims about damage caused to his heart, defendants' standard of care, and his emergency room records. The Court will not credit plaintiff's testimony to the extent that plaintiff attempts to offer his own medical opinion because plaintiff is not medical expert and cannot opine about what actions caused cardiac damage. However—and more importantly—plaintiff may provide evidence that he suffered pain as a result of defendants' alleged inaction and delay. Plaintiff is also entitled to rely on the emergency room record that states he suffered an "[a]cute on chronic systolic heart failure" (Dkt. 76, at 19) and defendants' own expert's statement that defendant Shon failed to follow DOC protocol on December 26, 2018. Dkt. 78, at 2.

Seventh, the Court declines to rule on the request to strike plaintiff's statements about Centers for Disease Control ("CDC") and Mayo Clinic information and his cardiologist's opinion. Dkt. 77, at 4–5. The Court does not rely on any of plaintiff's statements about CDC and Mayo Clinic information regarding his conditions. And the Court does not rely on plaintiff's statements regarding his cardiologist's opinion; instead, the Court refers to the opinion itself.

Eighth, the Court also declines to rule on the motion to strike plaintiff's version of grievance 19671210. *See* Dkt. 76, at 25. The Court agrees that the grievance has clearly been modified to favor plaintiff. However, reference to the modified grievance (Dkt. 76, at 25) is not necessary to resolve the summary judgment motions, so that ruling on the request is not necessary when issuing this report and recommendation.

Finally, the Court notes that defendants do not object to plaintiff's sur-reply (*see* Dkt. 84), although plaintiff filed it more than a week after defendants' motion for summary judgment

1    was ripe for decision.  Upon consideration, the Court will accept the sur-reply and has

2    considered it, as well as the remainder of the documents of record, when making this

3    recommendation on the summary judgment motions.

4    **III. Summary Judgment Motions**

5        **A. Exhaustion**

6    Defendants first assert that plaintiff's claims should be dismissed because he has failed to

7    exhaust his administrative remedies before bringing his claims.  Dkt. 67, at 7–10.

8    Defendants rely on evidence that plaintiff filed a number of grievances, none of which he

9    pursued past the level 1 stage and most of which were completed at "[l]evel 0" and never

10   exhausted.  *See* Dkt. 69, at 1–3.  Defendants provide a grievance coordinator's declaration that

11   plaintiff filed 11 grievances related to his time at DOC.  Dkt. 69, at 3.  The grievance coordinator

12   also states that grievances may be pursued through level 3 and that the coordinator did not

13   identify any grievances related to defendant White or other grievances related to defendants

14   Harold and Shon.  *See* Dkt. 69, at 3–4.

15   The grievance coordinator states that there is a DOC policy that prevents having more

16   than five active grievances or appeals at a time.  Dkt. 69, at 3.  Pursuant to this policy, some of

17   plaintiff's grievances were rejected.  Dkt. 69, at 3–4.  The parties dispute whether DOC

18   improperly noted certain grievances as separate initial grievances, rather than rewrites of prior

19   grievances.  *See* Dkt. 77, at 10.

20   Whether or not plaintiff's grievances were improperly noted as additional grievances is

21   not, however, dispositive of whether plaintiff exhausted his claims in this lawsuit.  Separately

22   from this issue, plaintiff has created a genuine issue of material fact regarding whether he

23   proceeded to level 3 with any of his grievances.  Plaintiff states, on personal knowledge and

24

1  under penalty of perjury, that "on May 11th, 2020[,] Grievance Coordinator Dahne sent me a

2  message via Kiosk, stating that I completed a three level response, which completes exhaustion

3  of the grievance process."  Dkt. 75, at 3; *see also* Dkt. 85, at 21–22 (two prisoners' declarations

4  that they witnessed plaintiff receive a level 3 response to an unspecified grievance).  Plaintiff

5  does not explain which grievance the alleged response from Dahne pertained to and whether it

6  was one of the eleven grievances noted by the grievance coordinator or another grievance, not

7  included in the grievance coordinator's declaration.

8           Defendants provide no argument or explanation of why plaintiff's statement that he

9  received a level 3 response does not create a genuine issue of material fact.  Indeed, they do not

10 acknowledge plaintiff's statement.  Plaintiff's claim that he exhausted an unspecified grievance

11 is in conflict with the grievance coordinator's declaration implying that plaintiff never filed

12 grievances related to his time at WCC other than the 11 that he failed to exhaust.  *See* Dkt. 69, at

13 3.  Moreover, the Court is unable to ascertain which of plaintiff's grievances he claims to have

14 exhausted and if plaintiff filed additional grievances that are not before the Court.  Thus, the

15 Court is unable to ascertain whether plaintiff's purportedly exhausted grievance pertains to

16 claims against defendant Shon, White, Harold, or some other matter entirely.

17          Therefore, to the extent that defendants seek summary judgment dismissal of plaintiff's

18 claims on the basis of a failure to exhaust, their summary judgment motion should be denied.

19                     **B.  § 1983 Claim for Cruel and Unusual Punishment**

20                                **1.  Defendant Shon**

21          Defendants assert that plaintiff cannot show that defendant Shon violated the Eighth

22 Amendment for the following reasons: (1) plaintiff can show no more than a difference in

23 medical opinion, (2) plaintiff can show no impact to his health as a result, and (3) defendant

24

1   Shon is entitled to qualified immunity. *See* Dkt. 67. Plaintiff requests summary judgment in his

2   favor on his claims against defendant Shon. *See* Dkt. 66. Genuine issues of material fact prevent

3   granting either summary judgment motion on this point.

### a. Legal Principles

5   To establish deliberate indifference, plaintiff must show that defendant Shon knew of and

6   disregarded an excessive risk to his health or safety "by failing to take reasonable measures to

7   abate [the risk]." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994). Defendant Shon must have

8   been "both . . . aware of facts from which the inference could be drawn that a substantial risk of

9   serious harm exist[ed]" and have drawn the inference. *Id.* To be liable, the nature of a

10  defendant's responses must be such that defendant purposefully ignored or failed to respond to a

11  prisoner's pain or possible medical need in order for deliberate indifference to be established.

12  *McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1992), *overruled in part on other grounds*,

13  *WMX Techs., Inc. v. Miller*, 104 F.3d 1133, 1136 (9th Cir. 1997).

14  Because this matter is before the Court on cross-motions for summary judgment, the

15  Court looks to whether, in response to summary judgment, each party has come forward with

16  evidence from which a jury could find in that party's favor. *See also Celotex Corp.*, 477 U.S. at

17  322 (alternatively, defendants may obtain summary judgment dismissal by showing that plaintiff

18  has failed to make a showing sufficient to establish an essential element of his case, on which he

19  bears the burden of proof).

20  If both sides have come forward with evidence creating factual issues and neither side is

21  entitled to judgment as a matter of law, both parties' summary judgment motions should be

22  denied. As related to the claims against defendant Shon under § 1983, the evidence presented

1  creates issues of fact that prevent the Court from recommending summary judgment in favor of

2  either party.

3                                        **b. Parties' Evidence**

4          Defendants rely on defendant Shon's declaration that on the evening of December 26,

5  2018, plaintiff arrived by wheelchair in the infirmary, complaining of chest pain, shortness of

6  breath, and left shoulder and arm numbness.  Dkt. 71, at 2.  Defendant Shon states that she

7  "evaluated [plaintiff] to determine if he had an emergent condition, and to determine what steps

8  to take for his care."  Dkt. 71, at 2.  She took his vitals, reviewed his medical records, and noted

9  that plaintiff had taken his prescribed medications.  Dkt. 71, at 2.  She did not observe abnormal

10 vital signs other than high blood pressure.  Dkt. 71, at 2.

11         Defendant Shon states that if she had observed something abnormal, she would have

12 contacted the on-call provider.  Dkt. 71, at 3.  Without a provider on site, she was unable to read

13 an EKG and therefore did not administer one.  Dkt. 71, at 3.  She instructed plaintiff to sign up

14 for a sick call the next day.  Dkt. 71, at 3.

15         Defendants also rely on the declaration of Erin Lystad, a DOC physician assistant, who

16 notes that plaintiff has a chronic heart condition and other medical conditions.  Dkt. 78, at 2.  Ms.

17 Lystad opines that defendant Shon failed to "adequately address[]" plaintiff's concerns because

18 she should have completed a "chest pain nursing assessment and contacted a provider."  Dkt. 78,

19 at 2.  This is because "[t]he course of treatment for chest pain is a provider's decision.  Checking

20 vitals will not determine whether someone is having a heart attack."  Dkt. 78, at 2.  Ms. Lystad

21 opines that there was no lasting harm or injury, however, because plaintiff was hospitalized two

22 days later and given nitroglycerine, but no other treatment or medication.  Dkt. 78, at 2.

23

24

For his part, plaintiff asserts that there was a delay transferring his medication with him to WCC, so that by December 28, 2018, he had been without his prescribed medications for "several days." Dkt. 58, at 8. Plaintiff states that defendant Shon refused to provide him with prescribed medication or to conduct an EKG, instead simply ignoring his complaints of severe chest pains. Dkt. 58, at 20, 22; *see also* Dkt. 66, at 9 (plaintiff's statement that defendant Shon refused to give plaintiff "heart medications" and "prescribed medications"). Plaintiff also provides a declaration from another person, Edmond Morgan, who states that he "constantly" witnessed defendant Shon refuse to provide plaintiff with his medications. Dkt. 62, at 35.

On the morning of December 28, plaintiff was again treated, and this time the provider completed a chest pain nursing assessment (Dt. 76, at 39), ordered the on-call practitioner to be immediately contacted, and, pursuant to a nurse's order, started plaintiff on nitroglycerine. Dkt. 76, at 40. A provider's note documents that plaintiff complained of pain that was "9/10," and plaintiff was sent to the emergency room. Dkt. 76, at 41.

Plaintiff provides the documentation from his emergency room visit on December 28, 2018, which states that he was suffering "[a]cute on chronic clinical systolic heart failure." Dkt. 62, at 21. He discharged as "[i]mproved" on the same day. Dkt. 62, at 21.

### c. Analysis

First, related to defendants' summary judgment motion, defendants rely on the well-established rule that "a plaintiff's showing of nothing more than 'a difference of medical opinion' as to the need to pursue one course of treatment over another [is] insufficient, as a matter of law, to establish deliberate indifference." *See Jackson v. McIntosh*, 90 F.3d 330, 332 (9th Cir. 1996). But this principle does not apply if officials "'deny, delay or intentionally interfere' with needed medical treatment" or when the chosen course of treatment is "'medically

1  unacceptable under the circumstances.'"  *Sandoval v. Cty. of San Diego*, No. 18-55289, 2021

2  WL 116539, at *17 (9th Cir. Jan. 13, 2021) (quoting *Jett v. Penner*, 439 F.3d 1091, 1096 (9th

3  Cir. 2006); *Snow v. McDaniel*, 681 F.3d 978, 988 (9th Cir. 2012)).

4      Here, taking the evidence in the light most favorable to plaintiff, as the Court is required

5  to do when considering defendants' motion , defendant Shon knew that plaintiff had a chronic

6  heart condition and was suffering from chest pain, plaintiff told her that he needed his

7  medications, DOC protocol required her to complete a chest pain assessment, and she failed to

8  do so.  Indeed, plaintiff provides evidence that she failed to provide any medication or further

9  treatment or to call another provider, instead returning plaintiff to his unit and advising him to

10  sign up for sick call the next day.  Dkt. 76, at 38.  This evidence is sufficient to support a claim

11  of deliberate indifference.  *See also Easter v. Powell*, 467 F.3d 459, 465 (5th Cir. 2006) (holding

12  that there was a viable claim of deliberate indifference where a prison nurse "refused to provide

13  any treatment to, and ignored the complaints of, a patient suffering from severe chest pain that

14  she knew had a history of cardiac problems.").  Thus, if the evidence is viewed in this light,

15  defendant Shon's motion for summary judgment must be denied.

16      Moreover, evidence that defendant Shon failed to abide by the chest pain protocol

17  supports an inference of deliberate indifference.  *See Mata v. Saiz*, 427 F.3d 745, 757–58 (10th

18  Cir.2005) (reversing summary judgment where nurse's violation of published health-care

19  requirements was circumstantial evidence that she knew of substantial risk of harm); *see also*

20  *Phillips v. Roane Cnty., Tenn.*, 534 F.3d 531, 542–43 (6th Cir. 2008) (affirming denial of

21  qualified immunity for paramedic whose failure to follow established treatment protocols could

22  constitute deliberate indifference).

23

24

1  Alternatively, defendants argue that their summary judgment motion should be granted

2  because plaintiff did not suffer any harm from the two-day delay in treatment. *See* Dkt. 77, at 6.

3  The Court notes that on December 28, when plaintiff was again seen by DOC medical staff and

4  then sent to the emergency room, plaintiff received medication for his symptoms and his

5  condition "improved." *See* Dkt. 62, at 21.  Separately from whether there is evidence that the

6  two-day period permanently worsened plaintiff's heart condition, plaintiff's claim that he spent

7  two days suffering from "intolerable chest pains" as a result of defendant Shon's actions is

8  adequate to support a claim for deliberate indifference. *See* Dkt. 58, at 19; *see also Easter*, 467

9  F.3d at 465 ("[Plaintiff] clearly stated an Eighth Amendment violation with regard to the severe

10  chest pain he suffered during the period of time [defendant] refused to treat him."); *Sealock v.*

11  *Colorado*, 218 F.3d 1205, 1210 (10th Cir. 2000) ("To the extent [defendants] make a causation-

12  based argument that [a guard's] action or inaction did not cause [the prisoner] any injury, this

13  argument also must fail. Although [the guard] did not cause [the prisoner's] heart attack, there is

14  factual evidence from which a jury could conclude that the delay occasioned by his inaction

15  unnecessarily prolonged [the prisoner's] pain and suffering.").

16  Next, defendants argue that even if defendant Shon was deliberately indifferent, her

17  actions did not violate any clearly established law, so that qualified immunity shields her from

18  liability. *See* Dkt. 67, at 22.  There is little authority on point from the Ninth Circuit. *See Long*

19  *v. Cty. of L.A.*, 442 F.3d 1178, 1186 (9th Cir. 2006) (noting genuine issue regarding deliberate

20  indifference had been found by lower court where prisoner died of congestive heart failure and

21  there was evidence that staff knew of his condition).

22  Nonetheless, authority from other courts of appeals can put a defendant on notice that

23  their actions violate clearly established law. *Dunn v. Castro*, 621 F.3d 1196, 1203 (9th Cir.

24

REPORT AND RECOMMENDATION - 15

2010) (stating that court may look to precedent from other circuits). Here, there is authority from courts of appeals other than the Ninth Circuit that would have put a reasonable person on notice that failing to treat plaintiff, call a provider, or take other action than returning him to his unit on December 26 violated the Constitution. In *Easter v. Powell*, for instance, there was evidence that a prison nurse knew that the prisoner had a heart condition and was suffering severe chest pain and that he did not have his prescribed medication, yet the nurse failed to provide any treatment. 467 F.3d at 463–64. The Fifth Circuit concluded that taking the facts alleged by plaintiff as true, he had shown a viable claim of deliberate indifference. *Id.* at 464.

Similarly, in *Mathison v. Moats*, 812 F.3d 594, 598 (2016), the Seventh Circuit concluded that there was evidence of deliberate indifference where a nurse ignored a report that a prisoner was suffering from the classic symptoms of a heart attack, despite being aware that the prisoner had a condition that increased his risk of heart attack. The Court noted that "civilization requires more in a life or death situation. . . ." *Id.* at 599; *see also Warren v. Prison Health Servs., Inc.*, 576 F. App'x 545, 556 (6th Cir. 2014) (concluding that there were triable factual issues regarding deliberate indifference where prisoner reported chest pain to nurse, who knew that prisoner was not taking necessary medications and that under prison policies, his emergent condition was considering "life threatening."). Finally, in *Al-Turki v. Robinson*, the Tenth Circuit noted that—

> [i]t has been clearly established in this circuit since at least 2006 that a deliberate indifference claim will arise when 'a medical professional completely denies care although presented with recognizable symptoms which potentially create a medical emergency, e.g. a patient complains of chest pains, and the prison official, knowing that medical protocol requires referral or minimal diagnostic testing to confirm the symptoms, sends the inmate back to his cell.

1    762 F.3d 1188, 1194 (10th Cir. 2014). Based on this authority, the Court finds that the law was

2    clearly established in 2018 such that, when viewing the evidence in the light most favorable to

3    plaintiff, defendant Shon would have known that her failure to provide medication, treatment, or

4    care other than taking plaintiff's vital signs and returning him to his cell on December 26, 2018,

5    amounted to deliberate indifference.

6          In summary, defendants' motion for summary judgment should be denied.

7          As for plaintiff's request for summary judgment on his claims against defendant Shon,

8    when viewing the facts in the light most favorable to defendants, there are, again, genuine issues

9    of material fact that prevent granting plaintiff's summary judgment motion. For instance,

10   plaintiff has provided evidence that his heart medications were not transferred to WCC with him

11   and that he asked defendant Shon for his medication and she refused. Dkt. 58, at 20, 22; Dkt. 62,

12   at 35. However, defendant Shon's primary encounter report states that plaintiff received his

13   medications on December 26, 2018. Dkt. 76, at 38. And while plaintiff maintains that he

14   suffered unnecessary pain and discomfort and has provided evidence that his condition

15   "improved" after treatment, defendant Lystad maintains that earlier treatment would "not have

16   made a difference." Dkt. 78, at 3. Thus, there are factual issues regarding whether earlier

17   intervention would have alleviated plaintiff's alleged severe chest pain.

18         In short, both summary judgment motions should be denied, as related to the claims

19   against defendant Shon for deliberate indifference.

20                              **2.  Defendant Harold**

21         Defendants assert that plaintiff cannot show that defendant Harold violated the Eighth

22   Amendment because (1) verbal harassment is inadequate, (2) there is no evidence that defendant

23   Harold used excessive force against plaintiff, and (3) qualified immunity shields defendant

24

1   Harold from liability.  Dkt. 67, at 13–14.  Plaintiff seeks summary judgment in his favor on his

2   claims against defendant Harold.  *See* Dkt. 66.  Again, both summary judgment motions should

3   be denied as related to this issue.

### a. Parties' Evidence

5   Defendant Harold asserts that he is assigned to the R3 unit at WCC and that plaintiff was

6   housed in the R5 unit.  *See* Dkt. 72, at 1–2.  Defendant Harold asserts that he worked in a

7   separate part of the facility from plaintiff's housing and that "[t]here is no possible way I would

8   have come into contact with [plaintiff]" before December 28.  Dkt. 72, at 2.  Defendant Harold

9   acknowledges that he was located in a place where he may have encountered plaintiff on

10  December 28, 2018, but Harold denies that he would have ignored plaintiff's health status report

11  ("HSR").  Dkt. 72, at 2.  Defendant Harold states that DOC policy forbids a wheelchair pusher

12  unless there is HSR authorization.  Dkt. 72, at 2.  According to defendant Harold, he pushed

13  plaintiff to the infirmary after plaintiff called a medical emergency.  Dkt. 72, at 3.

14  For his part, plaintiff asserts that on December 28, 2018, plaintiff showed defendant

15  Harold plaintiff's HSR authorizing a wheelchair pusher, but defendant Harold said that plaintiff

16  did not have an HSR and DOC did not allow wheelchair pushers.  *See* Dkt. 58, at 18, 31.

17  Plaintiff alleges that despite plaintiff's requests for medical attention, defendant Harold forced

18  plaintiff to wheel himself back to the infirmary, where plaintiff was "immediately" rushed to the

19  hospital and diagnosed as suffering acute heart failure.  Dkt. 58, at 18.

### b. Analysis

21  As relevant to defendants' summary judgment motion, defendants assert that even taking

22  plaintiff's evidence as true, no rational finder of fact could conclude that defendant Harold's

23  actions violated the Eighth Amendment.  Defendants assert that plaintiff has failed to come

24

1  forward with evidence that he had an HSR that authorized a wheelchair pusher as of December

2  28, 2018.  Dkt. 67, at 13.

3       Plaintiff has, indeed, failed to provide an HSR stating that he was authorized to have a

4  wheelchair pusher before December 29, 2018.  Instead, the HSRs that plaintiff provides state that

5  as of December 23, 2018, he was authorized to use a wheelchair (Dkt. 62, at 15) and that as of

6  December 29, 2018, he was authorized to have a pusher.  Dkt. 62, at 16.

7       Nevertheless, even without an HSR authorizing a pusher, plaintiff has come forward with

8  evidence that, taken as true, supports his claims that defendant Harold acted with deliberate

9  indifference.  Specifically, plaintiff claims under penalty of perjury that he told defendant Harold

10 that having to wheel himself to the infirmary would cause a medical emergency.  *See* Dkt. 58, at

11 30.  Plaintiff states that he told defendant Harold on December 28 that plaintiff was suffering

12 severe chest pains and difficulty breathing, and defendant Harold failed to assist him and

13 required plaintiff to wheel himself to the infirmary.  Dkt. 76, at 4.  Although defendant Harold

14 claims that he did, in fact, wheel plaintiff to the infirmary (*see* Dkt. 72, at 3), there are genuine

15 issues of material fact on this point that prevent granting either plaintiff's or defendants'

16 summary judgment motion.

17      Whether or not plaintiff had a health services report authorizing a pusher, if defendant

18 Harold in fact knew that plaintiff was suffering from these symptoms and nonetheless

19 deliberately ignored plaintiff's request for assistance, forcing him to wheel himself to the

20 infirmary, a trier of fact could find defendant Harold violated the Eighth Amendment.  *C.f.*

21 *Hammler v. Gooch*, No. 1:19-CV-00653-EPG, 2020 WL 2934766, at *7 (E.D. Cal. June 3,

22 2020), *report and recommendation adopted*, No. 119CV00653AWIEPGPC, 2020 WL 7042651

23 (Dec. 1, 2020) (finding a cognizable claim of deliberate indifference where plaintiff allegedly

24

1   told a corrections officer that he was having chest pains and had a heart condition, yet the

2   corrections officer ignored him).

3       Defendants alternatively assert that even taking plaintiff's version of events as true,

4   qualified immunity shields defendant Harold from liability because he did not violate any clearly

5   established law.  The Court is unaware of any Ninth Circuit case addressing a corrections

6   officer's deliberate failure to assist a prisoner suffering from chest pain.  Again, however,

7   authority from other circuits addresses this question.

8       At least three other circuit courts of appeals have held that under similar circumstances,

9   prison staff's actions violated—or could violate—the Eighth Amendment.  In *Sealock v.*

10  *Colorado*, 218 F.3d at 1208, 1210, the Tenth Circuit found that a prisoner had shown a

11  cognizable Eighth Amendment violation when he provided evidence that he suffered the

12  symptoms of a heart attack at 1:30 a.m. and a guard told him to wait until morning, refusing to

13  transport the prisoner to the hospital.  Notably, that case did not involve any evidence that the

14  guard should have known that plaintiff had heart issues based on plaintiff's medical history.

15      And in *Mathison v. Moats*, 812 F.3d at 598, the Seventh Circuit held that a prisoner's

16  evidence that a supervising lieutenant (who, again, was unaware of the prisoner's medical

17  history) failed to summon an ambulance for almost five hours while the prisoner suffered

18  excruciating chest and arm pain was adequate to survive summary judgment.  Similarly, in

19  *Easter v. Powell*, 467 F.3d at 461, as noted above, a nurse refused to provide medication or an

20  EKG to a prisoner suffering from chest pain despite knowing that the prisoner had a heart

21  condition and did not have his prescribed medication, resulting in the prisoner unnecessarily

22  suffering four hours of severe pain.  Taking the prisoner's allegations as true, the Fifth Circuit

23  found sufficient evidence of deliberate indifference to survive summary judgment.  *Id.* at 464.

24

In this case, taking plaintiff's evidence as true, not only did defendant Harold ignore plaintiff's complaints that he was suffering from heart problems, but defendant Harold forced plaintiff to wheel himself back to the infirmary over plaintiff's objections that this would worsen his condition and cause him to suffer a medical emergency.  Qualified immunity does not shield defendant Harold from liability, under these facts.

In addition, defendants argue that even if plaintiff's allegations are true, plaintiff "was not harmed by the alleged event."  Dkt. 77, at 8.  But plaintiff's complaint can reasonably be read as bringing his claims against defendant Harold on the basis that Harold's actions exacerbated plaintiff's condition, causing him to suffer a cardiac event.  Setting aside whether or not plaintiff suffered from permanent damage as a result, the exacerbation of plaintiff's pain that he claims to have suffered as a result is compensable under § 1983.

Defendants also argue that defendant Harold's alleged verbal harassment of plaintiff cannot, standing alone, form the basis of a viable Eighth Amendment claim against Harold.  *See* Dkt. 77, at 8.   However, plaintiff has set forth viable claims of deliberate indifference beyond mere verbal harassment, so that defendants' argument is not a reason to dismiss plaintiff's claims against defendant Harold on summary judgment.

In short, genuine issues of material fact preclude granting either defendants' or plaintiff's summary judgment motion related to claims against defendant Harold under § 1983.

### 3. Defendant White

Defendants seek summary judgment dismissal of the claims against defendant White and argue that (1) there is no evidence that defendant White personally participated in any of the alleged constitutional deprivations, (2) there is no evidence that defendant White failed to train or supervise staff in a manner that caused the alleged constitutional deprivations, and (3)

1    qualified immunity shields defendant White from liability.  *See* Dkt. 67.  Plaintiff seeks summary

2    judgment in his favor on his claims against defendant White.  The Court should grant

3    defendants' motion and dismiss all claims against defendant White under § 1983 with prejudice.

### a.  Personal Participation Theory

5    Defendants rely on defendant White's declaration, in which he states that until this

6    lawsuit was filed, he was unaware of plaintiff's complaints.  *See* Dkt. 73, at 1.  Defendant White

7    states that he does not personally manage communications from prisoners and reported incidents

8    at the facility.  Dkt. 73, at 1–2.  He states that the only records related to the lawsuit and sent

9    from plaintiff that his staff could find are an offender's kite sent to him on January 8, 2019 (Dkt.

10   73, at 6), and a response from a member of defendant White's staff on January 11, 2019.  Dkt.

11   73, at 5.

12   For his part, plaintiff claims that defendant White failed to intervene "when plaintiff

13   begged him to" and that defendant White knew of defendant Shon's and Harold's alleged

14   constitutional deprivations but did nothing.  Dkt. 58, at 25, 27.   Plaintiff states that he "showed

15   and informed [defendant White], as well [as] continued to write him letters[.]"  Dkt. 58, at 27.

16   But the evidence that plaintiff provides does not contradict defendants' evidence that plaintiff did

17   not write to or otherwise contact defendant White *before* the events at issue and that defendant

18   White was not personally aware of these issues because his staff handled such matters directed to

19   defendant White.  Plaintiff has only provided letters from *after* he was brought to the emergency

20   room on December 28, 2018.  *See* Dkt. 45, at 30–31.

21   Even viewed in the light most favorable to him, plaintiff has failed to come forward with

22   evidence from which a rational trier of fact could find that defendant White personally

1    participated in the alleged constitutional deprivations leading up to and including plaintiff's

2    hospitalization on December 28, 2021.

3                                        **b.  Failure to Train**

4          Plaintiff alternatively seeks to hold defendant White liable on the basis that he failed to

5    provide appropriate training at WCC.  *See* Dkt. 58, at 4.  Plaintiff alleges, among other things,

6    that defendant White is liable for failing to ensure that staff followed policies and provided

7    appropriate treatment.  *See* Dkt. 58, at 15, 19.  And plaintiff claims that there is an "on-going

8    pattern of deliberate indifference" by failing to ensure appropriate medical treatment and act

9    upon symptoms at WCC.  Dkt. 58, at 28.

10          Although generally, an official cannot be held liable under § 1983 merely on the basis of

11    supervisory liability, liability may exist where there that official has failed to train subordinates

12    and that failure to train amounts to deliberate indifference.  *See Ting v. United States*, 927 F.2d

13    1504, 1512 (9th Cir. 1991).  However, "[t]he cases in which supervisors have been held liable

14    under a failure to train/supervise theory involve conscious choices made with full knowledge that

15    a problem existed."  *Wardell v. Nollette*, No. C05–0741RSL, 2006 WL 1075220, at *3 (W.D.

16    Wash. Apr.20, 2006) (collecting cases); *see also Cousin v. Small*, 325 F.3d 627, 637 (5th

17    Cir.2003) (to impose liability for supervisor's failure to train, "a plaintiff must usually

18    demonstrate a pattern of violations and that the inadequacy of the training is obvious and

19    obviously likely to result in a constitutional violation") (citation, internal quotation marks

20    omitted), *cert. denied*, 540 U.S. 826 (2003).

21          Here, plaintiff has simply not provided evidence from which a rational trier of fact could

22    conclude that defendant White was aware of any issues at WCC regarding medical treatment of

23    prisoners with heart conditions.  The Court has reviewed plaintiff's briefing and evidence related

24

1    to the cross-summary judgment motions but finds no competent evidence made on personal

2    knowledge to support plaintiff's claims against defendant White for failure to train.  Even if

3    plaintiff establishes that he did not receive medication and treatment from defendants Harold and

4    Shon, plaintiff's failure to come forward with evidence from which a rational trier of fact could

5    conclude that defendant White was aware of these incidents is fatal to his claim.

6         Therefore, defendants' summary judgment motion should be granted in this regard, and

7    plaintiff's summary judgment motion should be denied as related to this claim.  Plaintiff's claims

8    against defendant White should be dismissed with prejudice.

9                          **C.  ADA and RA Claims**

10         Plaintiff alleges that defendant Harold's actions also violated Title II of the ADA and §

11    504 of the RA by failing to provide a reasonable accommodation for plaintiff's disabilities.  *See*

12    Dkt. 58, at 5.  Plaintiff does not allege a claim under the ADA or RA against any other

13    defendant.  *See* Dkt. 58, at 3 ("Plaintiff further claims violations for discrimination of [sic]

14    Harold under [the ADA and RA]."); *see also* Dkt. 58, at 4–5.

15         Title II of the ADA "prohibit[s] discrimination on the basis of disability."  *Lovell v.*

16    *Chandler*, 303 F.3d 1039, 1052 (9th Cir. 2002).  Title II provides that "no qualified individual

17    with a disability shall, by reason of such disability, be excluded from participation in or be

18    denied the benefits of the services, programs, or activities of a public entity, or be subject to

19    discrimination by such entity."  42 U.S.C. § 12132.  Similarly, Section 504 provides that "[n]o

20    otherwise qualified individual with a disability in the United States . . . shall, solely by reason of

21    her or his disability, be excluded from the participation in, be denied the benefits of, or be

22    subjected to discrimination under any program or activity receiving Federal financial assistance."

23    29 U.S.C. § 794(a).

24

Bringing a suit under the ADA and Section 504 requires the same elements: (1) the plaintiff is a qualified individual with a disability; (2) he was denied a reasonable accommodation that he needs to enjoy meaningful access to the benefits of public services; and (3) the program providing the benefit receives federal financial assistance. *McIntyre v. Eugene Sch. Dist. 4J*, 976 F.3d 902, 912 (9th Cir. 2020).

Importantly, "[t]he ADA prohibits discrimination because of disability, not inadequate treatment for disability." *Simmons v. Navaho Cty.*, 609 F.3d 1011, 1022 (9th Cir. 2010) (citing *Bryant v. Madigan*, 84 F.3d 246, 249 (7th Cir. 1996)), *overruled on other grounds by Castro v. Cty. of L.A.*, 833 F.3d 1060 (9th Cir. 2016). Section 504 has been interpreted similarly. *See, e.g.*, *Galvin v. Cook*, No. CV 00-29-ST, 2000 WL 1520231, at *6 (D. Or. Oct. 3, 2000) ("The ADA and Rehabilitation Act afford disabled persons legal rights regarding access to programs and activities enjoyed by all, but do not provide them with a general federal cause of action for challenging the medical treatment of their underlying disabilities.").

Nonetheless, "[t]he ADA may be violated where there is an '*outright denial of medical services*' because the complete lack of access to services may be 'so unreasonable as to demonstrate that they were discriminating against [plaintiff] because of his disability.'" *Anderson v. Cty. of Siskiyou*, No. C 10-01428 SBA, 2010 WL 3619821, at *5 (N.D. Cal. Sept. 13, 2010) (emphasis added) (quoting *Kiman v. N.H. Dep't of Corr.*, 451 F.3d 274, 285 (1st Cir. 2006)) (finding that the plaintiff provided sufficient allegations to sustain an ADA claim where the defendants did not provide the decedent with any access to mental health resources and failed to accommodate his mental disabilities); *see also Atayde v. Napa State Hosp.*, 255 F. Supp. 3d 978, 1004 (E.D. Cal. 2017) (finding that the plaintiff provided sufficient allegations to sustain an

ADA claim where the defendants deprived the plaintiff of all mental health services, and did so in defiance of a court order).

Plaintiff alleges discrimination on the basis of disability based on his claims that defendant Harold verbally harassed him and purposely exacerbated his heart condition by forcing him to wheel himself to the infirmary. But plaintiff relies on allegations of racial, not disability-based, discrimination by defendant Harold. *See* Dkt 58, at 18. As noted, a claim of extreme refusal to provide medical services could amount to an ADA violation. But plaintiff fails to show that defendant Harold's alleged refusal to wheel plaintiff to the infirmary or provide him with a wheelchair pusher on December 28, 2018, rose to such a level. *Accord* Palacios v. Cty. of S.*D.*, No. 20-CV-450-MMA (DEB), 2020 WL 4201686, at *14 (S.D. Cal. July 22, 2020) (dismissing claim of disability discrimination even though plaintiff had a viable claim of deliberate indifference because plaintiff failed to show a complete denial of medical services based upon disability).

Defendants' motion for summary judgment dismissal of plaintiff's ADA and RA claims should be granted, and plaintiff's claims should be dismissed with prejudice. His summary judgment motion in this regard should be denied.

### D.  State Law Claims

Plaintiff refers to state law claims in his complaint (Dkt. 58, at 3) but does not set forth the elements of any state law claims. Although the Court will liberally construe a *pro se* complaint, the Court cannot supply the elements of a cause of action for plaintiff. *Ivey v. Bd. of Regents of the Univ. of Alaska*, 673 F.2d 266, 268 (9th Cir.1982); *see also Negrete v. Lewis*, 585 F. App'x 364, 365 (9th Cir. 2014) (affirming summary judgment dismissal of factual allegations first made in a summary judgment motion). Defendants' summary judgment motion in this

1  regard should be granted, and plaintiff's state law claims, to the extent that he alleges any, should

2  be dismissed with prejudice.

3                      **E.  Claims for Declaratory Relief**

4         Plaintiff seeks declaratory relief that the actions described in his complaint were

5  unconstitutional.  Dkt. 58, at 34.  He also seeks injunctive relief ordering defendants to send him

6  to a cardiologist and to provide appropriate treatment.  Dkt. 58, at 34.

7  "A case becomes moot when the issues presented are no longer live or the parties lack a legally

8  cognizable interest in the outcome." *McQuillion v. Schwarzenegger*, 369 F.3d 1091, 1095 (9th

9  Cir. 2004).  In general, a prisoner's transfer to a different facility moots his claims for

10 declaratory and injunctive relief.  *Dilley v. Gunn*, 64 F.3d 1365, 1368 (9th Cir. 1995); *see also*

11 *Birdwell v. Beard*, 623 F. App'x 884 (9th Cir. 2015) (citing *Alvarez v. Hill*, 667 F.3d 1061, 1064

12 (9th Cir. 2012) to affirm dismissal of claims for declaratory and injunctive relief).

13        There is an exception to mootness for situations that are "capable of repetition yet

14 evading review" (*United States v. Brandau*, 578 F.3d 1064, 1067 (9th Cir. 2009)), but that

15 exception does not apply here because plaintiff has failed to come forward with any evidence

16 tending to show that he is likely to be transferred back to WCC.  *See Dilley*, 64 F.3d at 1368.

17        Therefore, defendants' summary judgment motion to dismiss plaintiff's claims for

18 declaratory and injunctive relief should be granted.  *See also Edmundson v. MacDonald*, 415 F.

19 App'x 838, 838–39 (9th Cir. 2011).

20                              **CONCLUSION**

21        The undersigned recommends that plaintiff's summary judgment motion (Dkt. 66) be

22 denied and defendants' summary judgment motion (Dkt. 67) be granted in part and denied in

23

24

part.  Specifically, all claims except plaintiff's claims against defendants Harold and Shon under

§ 1983 should be dismissed with prejudice.

Pursuant to 28 U.S.C. § 636(b)(1) and Fed. R. Civ. P. 72(b), the parties shall have

fourteen (14) days from service of this Report to file written objections.  *See also* Fed. R. Civ. P.

6.  Failure to file objections will result in a waiver of those objections for purposes of *de novo*

review by the district judge, *see* 28 U.S.C. § 636(b)(1)(C), and can result in a result in a waiver

of those objections for purposes of appeal. *See Thomas v. Arn*, 474 U.S. 140 (1985); *Miranda v.

Anchondo*, 684 F.3d 844, 848 (9th Cir. 2012) (citations omitted). Accommodating the time limit

imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **February 19,

2021,** as noted in the caption.

Dated this 4th day of February, 2021.

J. Richard Creatura
United States Magistrate Judge